RANKIN PROPERTIES, LTD., a Limited Partnership Organized under the Laws of Mississippi, Plaintiff,

v.

WOODHOLLOW ESTATES, a Limited Partnership Organized Under the Laws of Delaware, and American Investor Services, Inc., a New York Corporation, Defendants.

Civ. A. No. J88–0433(B).

United States District Court, S.D. Mississippi, Jackson Division.

May 10, 1989.

---

Leonard D. Van Slyke, Jr. and Barry H. Powell, Jackson, Miss., for plaintiff.

John C. Henegan and A. Camille Henick Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on the Motion of Defendants Woodhollow Estates and American Investor Services, Inc. for Summary Judgment on their counterclaim for a declaratory judgment.[1] Plaintiff has timely responded and the Court has considered the memoranda of authorities together with attachments and supplements submitted by the parties.

Plaintiff, Rankin Properties, Ltd. ("Rankin") is a Mississippi limited partnership which built Indian Creek Apartments ("the project"), a low income housing project in Rankin County, Mississippi. Defendant Woodhollow Estates ("Woodhollow"), a Delaware limited partnership, is a syndicated "upper-tier" investment partnership which serves as a vehicle through which tax credits and passive losses generated by its "lower-tier" operating partnerships, such as Rankin, are passed to its investor limited partners. Defendant American Investor Services, Inc. ("American") is a general partner of Woodhollow through which Woodhollow executed and delivered the promissory note at issue herein.

On or about December 1, 1986, Rankin and Woodhollow entered into an agreement whereby Rankin built the project and Woodhollow purchased an interest in the profits and losses of Rankin and the Low Income Housing Credit ("LIHC") to be earned by the project under the Tax Reform Act of 1986 as tax investments for its investor limited partners. Woodhollow executed an investor promissory note ("note") which required it to make semiannual payments to Rankin in accordance with the terms and conditions therein. The note also provided for adherence to the terms of a subscription agreement which gave to Woodhollow an 86.687% interest in the capital of Rankin and a 95% interest in the profits and losses of Rankin as well as 100% of the LIHC earned by the project. Additionally, the note was secured by a limited partner security agreement ("security agreement") under which Woodhollow, as debtor, granted to Rankin, as the secured party, a security interest in those interests gained by Woodhollow as a limited partner in the Rankin partnership consistent with the subscription agreement.

Pursuant to the note, Woodhollow was to have made an installment payment on June 1, 1988; however, no payment was tendered on that date. By way of a letter dated July 1, 1988, one day after the 30-day grace period had expired, Rankin provided notice to Woodhollow and American that it was exercising its right to accelerate based on Woodhollow's default and demanded the entire unpaid balance immediately due and payable. On July 8, 1988, Woodhollow tendered to Rankin the amount due.[2] On July 13, 1988, Rankin returned to Woodhollow the tendered check, stating that the payment was in

---

1. Plaintiff has also presented a Motion to Strike Defenses and a Motion for Summary Judgment. However, due to the disposition of this matter forthwith, these motions are rendered moot and as such are not considered herein.

2. The note provides that the June 1 installment was to be $10,968. However, based on the subscription agreement allowance for reduc-

tions based on the parties' sharing of any losses arising from any LIHC shortfall, Woodhollow reduced the payment amount to $6,934.75 to reflect such losses. By Disclaimer submitted to this Court, Rankin has admitted that the amount tendered was the amount owed by Woodhollow for the June 1 payment.

default and reasserting its demand under the acceleration clause.[3]

Rankin has instituted no foreclosure or other attempt to take possession of the collateral. It simply is proceeding, at least at this point, to obtain a judgment for the accelerated balance due under the note. Woodhollow and American assert that under Mississippi law they are entitled to reinstate after default the original terms of the note by bringing the installments current even though Rankin is not proceeding against the collateral.

In this diversity action, the court is bound to apply the law of Mississippi. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). No state court decisions squarely address the issues at hand and, thus, the court must resolve the matters as it believes the Mississippi courts would if presented with the same questions.

■ Though the note involved in this action is not one creating a typical creditor-debtor relationship, the Court is of the opinion that the Uniform Commercial Code as adopted in Mississippi is applicable here. Mississippi law provides that Chapter 9 of the UCC involving secured transactions, sale of accounts, contract rights and chattel paper applies

> to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures, including goods, documents, instruments, *general intangibles*, chattel paper or accounts; and also
>
> to any sale of accounts or chattel paper.

. . . .

The application of this chapter to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this chapter does not apply. Miss.Code Ann. § 75-9-102(1), (3) (1972) (parenthetical in original; emphasis added).[4] The Code defines "general intangibles" as "any personal property (including things in action) other than goods, accounts, chattel paper, documents, and instruments and money." Miss.Code Ann. § 75-9-106 (parenthetical in original). As a matter of fact, Rankin has admitted that it does hold a UCC security interest in Woodhollow's rights in their limited partnership.

■ Under the terms of the note, Woodhollow defaulted by failing to pay the amount due on June 1 within thirty days thereafter. Rankin invoked the optional remedy of acceleration by declaring on July 1 that the entire unpaid balance was immediately due and payable.[5] Woodhollow then attempted to cure the default, relying on the UCC redemption provision:

> At any time before the secured party has disposed of collateral or entered into a contract for its disposition under Section 9–504 [§ 75-9-1-504] or before the obligation has been discharged under Section 9–505(2) [§ 75-9-505(2) ] the debtor or any other secured party may after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral then due or past due (excluding any sums that would not then be due except for an acceleration provision) as well as the expenses reason-

3. The Court notes that the check submitted to Rankin was made payable to The Office Exchange, Inc. Although the letter of July 13 advises Woodhollow that the check should have been made payable to Rankin, neither party has stated that the rejection of the check was due to that error. Therefore, the Court places no weight on this inconsistency.

4. The transaction at issue here is not excluded from the effect of Chapter 9 as none of the exceptions of Section 75-9-104 are applicable.

5. The July 1 letter of Plaintiff stated that the note was in default and that Plaintiff "exercises

its [sic] option and declares the entire unpaid balance of the note now due and payable." Mississippi state courts have not addressed the issue of proper notice procedure where, as in this case, the secured party, in effect, accelerated without notice its intent to do so unless the debtor becomes current in his payments within a stated period. The question of proper procedure appears to be a valid one; however, it is not necessary to predict Mississippi's reaction to the notice procedure employed here since for the purposes of this motion, the Court assumes that the notice was proper.

ably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses.

Miss.Code Ann. § 75–9–506 (brackets and parentheticals in original; emphasis added). Rankin argues that this provision is inapplicable because it has not begun any proceedings to dispose of the collateral and thus there is no collateral to redeem. This position is clearly erroneous in view of the plain language of the statute which provides for redemption *at any time* before disposition of collateral or before discharge of the obligation.[6]

The application of Section 75–9–506 in this manner comports with the longstanding Mississippi policy of protecting debtors who have pledged collateral from undue hardship resulting from enforcement of acceleration clauses. The departure of Section 75–9–506 from the Model UCC[7] al-lowed a closer concordance with this policy as expressed in Miss.Code Ann. § 89–1–59:

> Where there is a series of notes or installment payments secured by a deed of trust, mortgage or other lien, and a provision is inserted in such instrument to secure them to the effect that upon a failure to pay any one (1) note or installment, or the interest thereon, or any part thereof, ... that all the debt secured thereby should become due and collectible, and for any such reason the entire indebtedness shall have been put in default or declared due, *the debtor, or any interested party, may at any time before a sale ... stop a threatened sale ... or stop any proceeding in any court to enforce such lien* by paying the amount of the note or installment then due or past due by its terms.... Any such payment or payments shall reinstate, according to the terms of such instrument, the amount so accelerated, the same as if such amount not due by its terms had not been accelerated or put in default.[8]

---

**6.** In support of its position, Rankin cites *Certified Realty Corp. v. Smith,* 198 Colo. 222, 597 P.2d 1043 (1979), in which the Colorado Supreme Court held that the holder of a note secured by a deed of trust could accelerate and sue for the entire balance with no effect given to the debtor's attempt to cure the default. That Court considered the application of a Colorado statute which provided that "[w]henever the only default or violation in the terms of the note and deed of trust or mortgage *being foreclosed* is non-payment of the sum due thereunder, the owners of the property *being foreclosed* or parties liable thereon shall be entitled to cure...." Colo.Rev.Stat. § 38–39–118 (1973). The clear language of that statute provides that the tender of payment after default can cure such default only where a foreclosure action has actually been initiated. *Certified Realty,* 597 P.2d at 1044. It is a general redemption statute not under the UCC such as is applicable in the instant action. Furthermore, the language of the Colorado section is in direct opposition with that clear language of Mississippi's Section 75–9–506 which allows for redemption *at any time* before disposition of collateral.

**7.** Section 9–506 of the Model UCC allows a debtor to redeem collateral only if he tenders

all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in ar-ranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorneys' fees and legal expenses.

Mississippi's version of this section lessens the requirement of curing a default, allowing a debtor to tender only those amounts then due or past due.

**8.** The Mississippi legislature first enacted this provision in 1924. Miss.Laws Ch. 157, H.B. No. 171 (1924). The statute was designed to protect debtors who had pledged real property as security under notes containing optional acceleration provisions and to counter the harsh consequences of the rules laid down by the Mississippi Supreme Court in *Day v. Hogans,* 130 Miss. 128, 93 So. 578 (1922); *Smith v. Williams-Brooke Co.,* 111 Miss. 393, 71 So. 648 (1916); and *Caldwell v. Kimbrough,* 91 Miss. 877, 45 So. 7 (1907). For legislative history of what is now Section 89–1–59, see Miss. Laws Ch. 157, H.B. No. 171 (1924), *codified as* Miss.Code Ann. § 2170 (1930), *recodified as* Miss.Code Ann. § 89–1–59 (1972); *amended,* Miss.Laws Ch. 414, H.B. No. 1040 (1975), *recodified as* Miss.Code Ann. § 89–1–59 (Supp.1988). The 1975 amendment deleted that part of Miss.Laws Ch. 157, H.B. No. 171 (1924), as originally enacted, which provided that the statute did not apply to loans of the federal land banks. Otherwise, the original provision has remained unchanged for 75 years.

While Section 89–1–59 applies only to secured transactions not covered by the UCC section, each provision imposes "a substantially similar requirement" that the redemption amount be tendered before disposal of the collateral. *Dungan v. Dick Moore, Inc.*, 463 So.2d 1094, 1099 (Miss. 1985). Importantly, the debtor's right to "stop a threatened sale" or to "stop any proceeding in court" granted under Section 89–1–59 is not contingent upon the secured party's being in possession of the collateral. Section 75–9–506 likewise contains no language which would require such possession. Also, Miss.Code Ann. § 75–9–501(2) expressly provides that the debtor's rights under Section 75–9–506 begin "after default," with no other limiting language.

Furthermore, a defaulting debtor would be stripped of the protection of Section 75–9–506 if the secured party was allowed to proceed with an action on the note without acceptance of the debtor's tender of the amount due. According to Section 75–9–501(1) the secured party may indeed "reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure." These rights are cumulative and by the terms of the Security Agreement in this case, the secured party may resort to those remedies separately, successively or concurrently. This means that Rankin could at any time proceed with these other remedies and/or any of the remedies provided in the Security Agreement, which includes, *inter alia*, the right to pursue a judgment "and, in conjunction with any action, seek any ancillary remedies provided by law, including levy of attachment and garnishment." [9] Obviously, Rankin has not given up its right to its interest in the collateral or to pursue any of the other remedies it has pursuant to the Security Agreement. Rankin has expressed a desire to obtain a judg-

ment on the note by filing this action but has in no way stated that this is the only remedy that it ever intends on pursuing. Simply because Rankin had not taken steps to take or retain any or all of the distributions attributable to the collateral or to sell or otherwise dispose of the collateral as provided for in the security agreement, Woodhollow's right to, in effect, "cure" the default by resort to the redemption provision was not improper. It would be unreasonable to require a debtor to wait for the secured party to take action before tendering the amount in default. The parties do not contest the fact that Woodhollow attempted a tender of payment of the proper amount due subsequent to Rankin's notice of acceleration and demand of payment. It was the rejection of this tender by Rankin that was in contravention of the plain language of the law.

The Court thus finds that were the Mississippi Supreme Court presented with the question under Section 75–9–506 of whether a debtor, by tendering all past due sums (and expenses) has the right to reinstate a secured installment obligation after notice of default and acceleration by the creditor where the creditor seeks only a judgment and not possession of the collateral, it would follow the long-standing policy of Mississippi to protect the collateral and would answer in the affirmative.

In sum, the Court finds that there are no genuine issues of material fact, that Plaintiff Rankin Properties, Ltd. improperly rejected the payment of Defendant Woodhollow Estates tendered pursuant to the provisions of Miss.Code Ann. § 75–9–506 and that acceptance of such tender shall return the parties to the *status quo ante*. Therefore, the Court grants the Motion of Defendants Woodhollow Estates and American Investors Services, Inc. for Summary Judg-

---

**9.** The remaining remedies provided for in the Security Agreement are:

　a) To receive and retain any and all distributions attributable to the Collateral;

　.　　.　　.　　.　　.

　c) To sell or otherwise dispose of the Collateral in a *commercially reasonable manner* by public or private sale in accordance with the Uniform Commercial Code, and

　d) To pursue any other remedy available at law (including those available under the provisions of the Uniform Commercial Code) or in equity to collect, enforce or satisfy any Obligation then owing, whether by acceleration or otherwise.

ment on their counterclaim for declaratory judgment and dismisses the complaint of Plaintiff Rankin Properties, Ltd.

A final judgment shall be entered pursuant to Federal Rule of Civil Procedure 58.

SO ORDERED.