In the Matter of NATIONAL SMELT-
ING OF NEW JERSEY, INC, Debtor.

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION

v.

NATIONAL SMELTING OF NEW
JERSEY, INC.

and

NL INDUSTRIES, INC.,

v.

NATIONAL SMELTING OF NEW
JERSEY, INC.

Civ. A. Nos. 84–C–1971, 84–C–1972.

United States District Court,
D. Colorado.

June 4, 1985.

Richard F. Engel, Deputy Atty. Gen.,
R.J. Hughes, Trenton, N.J., for N.J. Dept.
of Environmental Protection.

H. Thomas Coghill, Deborah Freis
Shpall, Coghill & Goodspeed, Denver, Colo.,
for NL Industries, Inc.

Glen E. Keller, Davis, Graham & Stubbs, Denver, Colo., for National Smelting of New Jersey, Inc.

## ORDER

CARRIGAN, District Judge.

The New Jersey Department of Environmental Protection ("NJDEP") and NL Industries, Inc. appeal from an order of the United States Bankruptcy Court for the District of Colorado granting the Trustee's application for leave to abandon property. This court has jurisdiction of this appeal pursuant to 28 U.S.C.A. § 1334(a)(1985 Cum.Supp.).

National Smelting of New Jersey, Inc. ("National Smelting") filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code on March 5, 1984. On March 27, 1984, National Smelting voluntarily converted the proceeding to a Chapter 7 liquidation proceeding. Garry R. Appel, Trustee, applied to abandon property of the estate on June 15, 1984, stating:

"1. That the National Bank of Georgia has a security interest in substantially all the property of the estate.

2. The said property is worth less than the amount of the encumbrances on said property and is of no value to the estate.

Wherefore, the Trustee requests that the Court enter its Order authorizing the Trustee to abandon said property."

Although the property sought to be abandoned is not identified in the application, it appears that National Smelting's principal asset is a lead smelting and refining plant in Pedricktown, New Jersey.

NL Industries and the NJDEP objected to the application. NL Industries is an unsecured creditor of National Smelting. It objected to abandonment on the ground that there had not been a sufficient investigation of the property's condition or of the debtor's financial status.

The NJDEP objected on the ground that abandonment of the property would result in deterioration of holding lagoons and equipment on the property, resulting in releases of hazardous substances into the waters of the state in violation of state environmental laws. Residue created by lead reprocessing, when wet, produces a toxic leachate that can contaminate surface and ground water at the site, posing a serious threat to the environment and to the public health. The NJDEP asserted that abandonment of hazardous wastes to an assetless corporation would violate the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10–23.11 *et seq.*, the New Jersey Solid Waste Management Act, N.J.S.A. 13:1E–1 *et seq.*, and NJDEP regulation N.J.A.C. 7:26–9.2(b).

NL Industries owned the facility until early 1983. In October 1982, NL Industries entered into an administrative consent order with the NJDEP under which NL Industries agreed to undertake a remedial program designed to prevent the release of heavy metals into the environment and to remove those contaminants from soils and waters within the facility. When National Smelting bought the plant, National Smelting, its parent corporation, and NL Industries entered into an amended consent order under which National Smelting assumed NL Industries' obligation under the original consent order (with certain enumerated exceptions).

After a hearing on the objections held August 14, 1984, Bankruptcy Judge Gueck orally granted the Trustee's motion to abandon the property. These appeals followed. Both NL Industries and the NJDEP filed briefs. The only response was a brief filed by the United States Trustee asserting that the appeal is moot.

■ The United States Trustee argues that this appeal is moot because the Bankruptcy Court entered an order on September 24, 1984 granting relief from the stay to a secured creditor, National Bank of Georgia. National Bank of Georgia, however, has not to date foreclosed on the property. Until foreclosure, the property remains part of the estate. This appeal, therefore, is not moot.

NL Industries requests that I reverse the Bankruptcy Court's order permitting abandonment, asserting the following reasons:

**1014**

1. The Trustee failed to conduct an adequate investigation regarding the value of the abandoned property;

2. The Trustee failed to conduct an adequate investigation regarding the validity and priority of the secured creditors' claims;

3. The Trustee failed to adequately demonstrate that the property was of inconsequential value to the Bankruptcy estate;

4. The record of the August 14, 1984 hearing is insufficient to support the Bankruptcy Court's order abandoning the debtor's principal asset.

Upon review of the record, I conclude that the order of abandonment must be reversed for the above-stated reasons.

■ A trustee may, after notice and hearing, abandon property of the estate that is "burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C.A. § 554(a) (1985 Cum Supp.). In order to determine whether this statutory requirement is met, the trustee must ascertain the property's fair market value and the amount and validity of the outstanding liens against the property. *In re Brannan,* 5 B.R. 505, 507 (D.V.I.1980); *In re Air Vermont, Inc. and North Atlantic Airlines, Inc.,* 41 B.R. 486 (Bankr.D.Vt. 1984).

■ The Trustee presented no evidence in support of his application to abandon. He did not obtain an independent appraisal of the value and marketability of the plant. Although he apparently spoke to the debtor and questioned certain creditors at the section 341 creditors' meeting, he did not reveal to the Bankruptcy Court or to the appellants either the questions asked or the answers given. There is no evidence that the Trustee analyzed the secured creditor's lien. The only evidence of the estate's assets and liabilities is the debtor's own schedule submitted with its application for bankruptcy. That schedule lists total assets of $10,721,259 and liabilities of $10,-229,987. That statement certainly does not support the Trustee's assertion that the property is of no value to the estate given

that stated assets exceed liabilities by approximately $491,000.

The Trustee failed to meet his obligation to the estate's creditors to show by competent evidence that the Pedricktown facility is burdensome to the estate or is of inconsequential value. The Bankruptcy Court clearly erred in granting the application for abandonment without requiring the Trustee to produce competent evidence in support of the application.

The NJDEP appeals on the grounds asserted by NL Industries and on an additional ground—that a trustee in bankruptcy may not abandon property of the estate where abandonment contravenes state public health and safety laws. The NJDEP is interested in this proceeding because it wishes to use funds of the estate to clean up the hazardous waste problem at the site.

■ The NJDEP litigated this issue previously in a factually similar case, *In the Matter of Quanta Resources Corp.,* 739 F.2d 912 (3d Cir.1984) and 739 F.2d 927 (3d Cir.1984) (collectively referred to as *"Quanta"*). In *Quanta,* the Third Circuit unequivocally held that a trustee does not have the right to abandon property of the estate where abandonment contravenes state public health and safety laws. The NJDEP urged the Bankruptcy Court to follow *Quanta* in the instant case. Judge Gueck, however, rejected the majority opinion and followed the dissent, holding that assets of the estate, if any, must be distributed to creditors, not used to clean up hazardous waste. I disagree.

I adopt both the reasoning and conclusion of the Third Circuit in *Quanta* as the law governing this case. The Trustee attempts to distinguish *Quanta* on the ground that the trustee there assertedly had other assets he could sell to pay for the cleanup whereas in the instant case the trustee has nothing. I do not find *Quanta* to be distinguishable. First, there is no indication in *Quanta* that the trustee had readily disposable assets to finance the cleanup. Mortgages on the property were in excess of $450,000 and the forced sale value was only $428,000 (although the ap-

praised fair market value was $535,000). 739 F.2d at 921 n. 9. No buyer was at hand. 739 F.2d at 914 n. 3. The trustee was unable to liquidate major assets at the time. 739 F.2d at 921 n. 9.

■ In the instant case, it is unknown whether there are any assets that could be sold to pay for the cleanup. The only statement of assets is the lump sum figure provided by the debtor. The Trustee asserts that the National Bank of Georgia has a security interest in "substantially all" the property of the estate. How much is that? Are there sufficient unencumbered assets to pay for a cleanup?[1] The Trustee apparently assumes that the cost would be astronomical, but no evidence has been presented on this issue.

Judge Gueck approved the abandonment because, in his view, the Bankruptcy Code, as federal law, does not bow to state health and safety laws. Moreover, Judge Gueck stated his belief that use of estate assets for cleanup would effect a taking of creditors' property in violation of the Fifth Amendment. The *Quanta* court rejected these arguments and I agree with its analysis.

Judge Gibbons, dissenting in *Quanta,* chastised the majority for remanding the case without guidance on critical issues. I am not unaware of this difficulty. But the record in this case is so deficient that it would require undertaking something in the nature of an advisory opinion to decide specific issues at this point. It must be determined preliminarily, for example, whether there are any assets in the estate that can be liquidated, their value, and the validity, priority and amount of liens on the assets.

Accordingly,

IT IS ORDERED that the order granting leave to abandon is reversed and this case is remanded to the Bankruptcy Court for further proceedings consistent with this opinion and *Quanta.*

1. I do not decide here whether New Jersey has a right to a first lien to pay for the cleanup. The

NJDEP did not brief this issue.