**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In re: C. WALTER WEISS, d/b/a
W&M Investment, d/b/a Weiss
Development; In re: PAULETTE H.
WEISS, d/b/a Karmel Korn, d/b/a
Connectables, Incorporated,
Debtors.

JOHANNA F. MCGAHREN, as personal
representative for the Estate of
Francis J. McGahren,

No. 95-2564

Creditor-Appellant,

v.

FIRST CITIZENS BANK & TRUST
COMPANY; JAMES GARY ROWE,
Attorney for First Citizens Bank,
Creditors-Appellees,

and

BARBARA A. HECK, Trustee,
Trustee-Appellee.

In re: C. WALTER WEISS, d/b/a
Weiss Development, d/b/a W&M
Investment; In Re: PAULETTE H.
WEISS, d/b/a Karmel Korn, d/b/a
Connectables, Incorporated,
Debtors.

JOHANNA F. MCGAHREN, as personal

representative for the Estate of
Francis J. McGahren,
Creditor-Appellant,

v.

BARBARA A. HECK, Trustee for C.
Walter & Paulette Weiss,
Trustee-Appellee.

No. 95-2706

2

In Re: C. WALTER WEISS, d/b/a
W&M Investment, d/b/a Weiss
Development; In Re: PAULETTE H.
WEISS, d/b/a Connectables,
Incorporated, d/b/a Karmel Korn,
Debtors.

JOHANNA F. MCGAHREN, as personal
representative for the Estate of
Francis J. McGahren,
Creditor-Appellant,

                                       No. 95-2707

v.

DAVID G. GRAY,
Creditor-Appellee,

and

BARBARA A. HECK, Trustee,
Trustee-Appellee,

and

FIRST CITIZENS BANK& TRUST
COMPANY; JAMES GARY ROWE,
Attorney for First Citizens Bank,
Creditors.

3

In Re: C. WALTER WEISS, d/b/a
W&M Investment; PAULETTE H.
WEISS, d/b/a Connectables,
Incorporated, d/b/a Karmel Korn,
Debtors.

ESTATE OF FRANCIS J. MCGAHREN,
Creditor-Appellant,

v.

BARBARA A. HECK, Trustee,
Trustee-Appellee.

No. 96-1879

Appeals from the United States District Court
for the Western District of North Carolina, at Asheville.
Richard L. Voorhees, Chief District Judge;
Lacy H. Thornburg, District Judge.
(CA-93-59-1, CA-94-60-1, CA-94-30-1,
CA-93-84-1, CA-95-242-1-T, BK-87-10330)

Argued: December 2, 1996

Decided: April 24, 1997

Before WIDENER and MURNAGHAN, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Murnaghan wrote the opinion,
in which Judge Widener and Senior Judge Phillips joined.

_____

**COUNSEL**

**ARGUED:** Matthew Francis McGahren, Norcross, Georgia, for
Appellants. David G. Gray, Jr., Asheville, North Carolina, for
Appel-
lees.

**OPINION**

MURNAGHAN, Circuit Judge:

In 1985, C. Walter Weiss and Appellant Francis J. McGahren dissolved their partnership, and their attorney executed a multiple-property deed that transferred several properties from the partnership to McGahren. In 1989, McGahren attempted to sell one of the properties, but he discovered that he could not pass good title to the property because the partners' attorney had inadvertently left the property out of the multiple-property deed.

In the meantime, Weiss had filed for bankruptcy. Thus, when McGahren discovered the defect in the deed, he turned the property over to Weiss's bankruptcy trustee, Appellee Barbara Heck. The bankruptcy court entered several orders adverse to McGahren, and the district court affirmed. For the reasons stated below, we also affirm.

I.

Weiss and McGahren formed a partnership, the W&M Investment Company ("W&M" or the "partnership"). In October 1984, W&M acquired the property at issue in the instant case, described as Lot 3, Ridgedale Subdivision, Buncombe County, North Carolina ("Lot 3" or the "property"), and it borrowed the purchase price from First Federal Bank.[1] In 1985, Weiss and McGahren dissolved their partnership. There is no evidence in the record, however, that Weiss or McGahren wound up the partnership affairs.

As part of the dissolution, the partners decided that McGahren would receive Lot 3 and other properties. The partners' attorney, George Saenger, accordingly executed a multiple-property deed to McGahren. The deed, however, erroneously failed to include Lot 3. As a result, the property remained titled in the name of W&M. Weiss and McGahren, however, were unaware of the title mistake, and they proceeded as if McGahren alone owned the property. McGahren

_____

[1] First Citizens Bank & Trust Company ("First Citizens Bank") later acquired First Federal Bank.

5

rented the property as a duplex, kept all of the rental proceeds, and
paid all of the maintenance costs, insurance, and taxes on the prop-
erty. In late 1989, however, McGahren realized the mistake when he
attempted to sell the property and discovered that he could not pass
good title.

In July 1987, Weiss filed a Chapter 7 bankruptcy petition. Since
Weiss was unaware of the title mistake at that time, he did not list Lot
3 as an asset of the bankruptcy estate. In late December 1989 or early
January 1990, when McGahren discovered the error in the deed, he
contacted the bankruptcy trustee, Appellee Barbara Heck. McGahren
told Heck that Lot 3 belonged to him and that, but for a mistake in
title, W&M would have deeded the property to him in 1985. Heck
asked McGahren whether there was any equity in the property, and
McGahren told her that he had a proposed sale contract for $68,000
(the "1989 offer"), which exceeded the mortgage payoff and other
liens. According to McGahren, Heck then told him that he would
have to pay the bankruptcy estate from the proceeds of the sale.

In February 1990, when Weiss learned of the error in the original
deed, he executed a general warranty deed (the "February 1990 deed")
that granted McGahren title to Lot 3. McGahren recorded the deed in
March 1990. However, a question then arose as to whether the Febru-
ary 1990 deed was voidable because Weiss had already filed for
bankruptcy.

In September 1991, Heck wrote to McGahren and offered to aban-
don the property in order to help him clear the title. By that time,
however, McGahren was having financial difficulties. He had stopped
making mortgage and insurance payments on the property, and First
Citizens Bank had begun foreclosure proceedings. Thus, when Heck
offered to abandon the property, McGahren abruptly changed his
position. He no longer claimed that he owned the property, but
instead claimed that the property belonged to the bankrupt estate.

In an effort to clarify the issues surrounding the property, Heck
brought a motion to abandon the property in December 1991. Based
upon realtor David Boyter's $55,000 appraisal of the property,[2] the

_____

[2] Since the 1989 offer for $68,000, a fire had partially destroyed the
house on Lot 3. Although McGahren had begun reconstruction, he had
not completed the repairs at the time that Heck moved to abandon the
property.

motion asserted that no equity existed in the property. McGahren objected to the abandonment. He claimed that instead of abandoning the property, the trustee had a duty to sell the property, pay the bank, and distribute any remaining proceeds to the creditors. McGahren claimed that a private sale would net a greater profit than foreclosure and thus would reduce the deficit that he owed the bank.

After a hearing in March 1992, the bankruptcy court issued an order abandoning the property. McGahren appealed that order to the District Court for the Western District of North Carolina. In February 1993, the district court remanded the case to the bankruptcy court for additional proceedings to determine the value of the property. At the second abandonment hearing, First Citizens Bank presented detailed appraisal and valuation testimony by its expert, Ted Vish, regarding the value of Lot 3. Like the realtor at the first abandonment hearing, Vish valued the property at $55,000. The bankruptcy court again granted Heck's motion to abandon Lot 3, and the court lifted the automatic stay on the property. First Citizens Bank then scheduled the property for foreclosure and sale.

McGahren appealed again and moved for an order staying the foreclosure pending appeal. In July 1993, the district court denied the motion and found that McGahren had not produced sufficient evidence to prove that the foreclosure sale would realize a lower profit than a private sale. On June 30, 1995, the district court affirmed the bankruptcy court's order granting abandonment and relief from stay. McGahren now appeals that ruling.

In March 1992, McGahren filed a separate suit against Heck for negligence and intentional misconduct. He claimed that Heck should have discovered the bankrupt estate's interest in Lot 3 before the 1989 offer fell through and that she should have consummated the sale of the property. Heck answered the complaint and later moved for summary judgment. After a hearing, the bankruptcy court granted Heck's motion and dismissed the action. McGahren appealed, and the district court affirmed on July 25, 1995. McGahren now appeals the district court's order.

In July 1993, the bankruptcy court imposed sanctions on McGahren pursuant to Federal Rule of Bankruptcy Procedure 9011

and the inherent powers of the court. McGahren appealed. On July 11, 1995, the district court affirmed the bankruptcy court's decision to impose sanctions on McGahren. However, the district court reversed the bankruptcy court's order that McGahren pay the attorneys' fees that the trustee and First Citizens Bank incurred after the district court's February 1993 remand of the bankruptcy court's abandonment order. The district court remanded the sanctions order to the bankruptcy court for further proceedings to determine the amount and form of sanctions. McGahren now appeals the district court's order affirming the sanctions.

Pursuant to the district court's remand of the sanctions order, the bankruptcy court held a hearing on October 18, 1995. McGahren died in August 1995, and his widow, Johanna McGahren, filed a brief on his behalf. On November 2, 1995, the bankruptcy court reduced its prior award of attorney's fees and also awarded additional attorney's fees to David Gray, Heck's attorney, for McGahren's subsequent conduct.

On November 10, 1995, Johanna McGahren filed a timely notice of appeal of the second sanctions order. On March 1, 1996, the district court clerk mailed a briefing letter to Mrs. McGahren that advised her that the appeal had been docketed and that her brief was due within fifteen days of the date of the letter. On April 11, 1996, Heck and Gray filed a motion to dismiss the appeal on the ground that Mrs. McGahren had failed to file an appeal brief. In her response and opposition to the motion, Mrs. McGahren claimed that she never received the briefing letter. Despite Mrs. McGahren's claim, however, the district court dismissed the appeal on May 3, 1996 pursuant to Federal Rules of Bankruptcy Procedure 8001(a) and 8009(a). Mrs. McGahren now appeals the dismissal order. We consolidated all four appeals for oral argument.

II.

When Weiss filed his Chapter 7 bankruptcy petition in 1987, title to Lot 3 remained with W&M. An issue therefore arose in the bankruptcy court regarding whether Weiss's bankrupt estate had an interest in Lot 3. The district court concluded that Lot 3 itself never became property of the bankrupt estate because it remained titled to

8

W&M. The court held, however, that the bankrupt estate did have an interest in Lot 3 because the partners had not completely wound up their partnership affairs at the time that Weiss filed his bankruptcy petition. The court concluded that the bankruptcy estate included Weiss's entitlement as a partner to a distribution upon the winding up of the partnership affairs. However, since the facts proven at the second abandonment hearing established that Lot 3 had little, if any, equity, the district court affirmed the bankruptcy court's order abandoning the bankrupt estate's interest in the property.

We review the district court's decision <u>de novo</u> . <u>See Travelers Ins. Co. v. Bryson Properties, XVIII (In re Bryson Properties)</u>, 961 F.2d 496, 499 (4th Cir. 1992). We review the bankruptcy court's findings of fact only for clear error. <u>Id.</u> Findings of fact are clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." <u>Green v. Staples (In re Green)</u>, 934 F.2d 568, 570 (4th Cir. 1991). The Supreme Court has explained:

> If the [lower] court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

<u>Anderson v. Bessemer City</u>, 470 U.S. 564, 573-74 (1985). We review the bankruptcy court's conclusions of law <u>de novo</u>. <u>See In re Bryson Properties</u>, 961 F.2d at 499.

A.

North Carolina law provides that a partnership does not terminate upon dissolution. The partnership continues until the partners complete the "winding up" of partnership affairs. <u>See</u> N.C. Gen. Stat. § 59-60 (1989). The North Carolina Court of Appeals has stated:

> [D]issolution of itself has no effect on existing liabilities of the partnership. If it did, partners could escape their obliga-

tions by dissolving. [The statute] provides that upon dissolution, the partnership is not terminated, but continues until the winding up of partnership affairs is completed. In other words, dissolution designates the point in time when the partners cease to carry on the business together; termination is the point in time when all the partnership affairs are wound up, winding up [meaning] the process of settling partnership affairs after dissolution.

Baker v. Rushing, 409 S.E.2d 108, 113 (N.C. Ct. App. 1991) (internal quotation marks and citations omitted). Moreover, the parties must present evidence regarding when the partners wound up the partnership affairs. Id. at 250. In the instant case, the parties failed to present any evidence that Weiss and McGahren wound up the partnership affairs of W&M. Thus, at the time of Weiss's bankruptcy, the partnership continued to own Lot 3.

The federal bankruptcy statute provides that a bankrupt estate "is comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. § 541(a)(1) (West 1993). Courts broadly define "property" that enters a Chapter 7 estate under § 541 to include all types of property, including "legal or equitable interests, tangible or intangible property, choses in action, and beneficial rights and interests that the Debtor has in the property of another." In re Lima Days Inn, Ltd., 10 B.R. 173, 174 (Bankr. N.D. Ohio 1981). However, courts consistently have held that partnership property itself does not become property of an individual partner's bankruptcy estate. See In re Signal Hill-Liberia Ave. Ltd. Partnership, 189 B.R. 648, 652 (Bankr. E.D. Va. 1995); Magers v. Thomas (In re Vannoy), 176 B.R. 758, 770 (Bankr. M.D.N.C. 1994). The courts base their reasoning on the fact that individual partners only have an indirect ownership interest in partnership property. **3** Thus, the district court correctly concluded that Lot 3 itself never became property of Weiss's bankrupt estate.

In the district court, McGahren vehemently argued that the bankrupt estate did include Lot 3. On appeal, however, McGahren claims

---

**3** Under North Carolina law, each partner owns partnership property as a tenant in partnership. See N.C. Stat.§ 59-55(a) (1989).

that the district court correctly concluded that the bankrupt estate did not include Lot 3. He now argues that since the property did not enter the bankrupt estate, the bankruptcy court had no jurisdiction to abandon it.

The federal statute regarding abandonment provides that "[a]fter notice and a hearing, the trustee may abandon <u>any property of the estate</u> that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C.A. § 554(a) (West 1993) (emphasis added). The issue thus becomes whether Weiss possessed a beneficial right or interest in Lot 3 that constituted "property of the estate." McGahren argues that since Lot 3 itself was not "property of the estate," the bankruptcy court had no jurisdiction to grant the trustee's motion to abandon it.

However, Weiss's estate did include an interest in the specific partnership property insofar as he was entitled, as a partner, to a distribution upon the winding up of the partnership affairs. Courts have held that such an interest constitutes "property of the estate." For example, the Bankruptcy Court of the District of Maryland noted that an individual debtor's estate includes the debtor's interest in specific partnership property. <u>See In re Korangy</u>, [1989-1990 Transfer Binder] Bankr. L. Rep. (CCH) ¶ 72,867, at 95,007 (Bankr. D. Md. Mar. 30, 1989), <u>aff'd</u>, 927 F.2d 596 (4th Cir. 1991). The court stated that because the partnership in question continued to own the property, "the debtor's estate included an interest in specific partnership property, but the property itself did not become part of the debtor's estate. Rather debtor's estate included the debtor's entitlement to the distribution as a partner upon the winding up of partnership affairs." <u>Id. See also In re Antonelli</u>, 148 B.R. 443, 446 (D. Md. 1992) (holding that a partnership interest constitutes "property of the estate"), <u>aff'd</u>, 4 F.3d 984 (4th Cir. 1993); <u>In re Signal Hill-Liberia Ave. Ltd. Partnership</u>,

189
at 652 (holding that an individual debtor's partnership interest is prop-
erty of the debtor's estate); <u>In re Vannoy</u>, 176 B.R. at 770 (same).

Thus, since Lot 3 remained titled in W&M and Weiss and McGahren had not wound up the partnership at the time that Weiss filed his bankruptcy petition, the bankrupt estate included Weiss's partnership interest in Lot 3. We hold that such an interest constitutes

11

"property of the estate" and that the bankruptcy court had jurisdiction
to abandon it.

B.

The bankruptcy court found, as a matter of fact, that the liens on Lot 3 exceeded its value and that the property therefore had little, if
any, equity. Accordingly, the court granted the trustee's motion to abandon Weiss's interest in the property. McGahren argues that even if the bankruptcy court did have jurisdiction over the matter, it should
not have abandoned Weiss's interest in Lot 3 because the property was worth a substantial amount of money.

Before a bankruptcy court may abandon property of the estate, "the trustee must ascertain the property's fair market value and the amount
and validity of the outstanding liens against the property." New Jersey
Dep't of Envtl. Protection v. National Smelting of N.J., Inc. (In re
National Smelting of N.J., Inc.), 49 B.R. 1012, 1014 (D. Colo. 1985).
At the abandonment hearing, First Citizens Bank presented testimony and evidence regarding the outstanding indebtedness on the mortgage.
The evidence revealed that the amount owed on the mortgage totaled $52,557.83. The evidence also established that McGahren owed $1,016.75 in real estate taxes. Moreover, the bank had incurred almost
$5,000 in attorneys' fees and costs in its attempts to collect on the
mortgage. Thus, the record supports the bankruptcy court's finding that the liens against the property amounted to over $58,000.

The parties presented conflicting evidence at the hearing regarding Lot 3's fair market value. First Citizens Bank's expert, Ted Vish, appraised the property at $55,000. The house on Lot 3 had sustained substantial fire and water damage that required extensive reconstruc-
tion. At the time that Vish appraised the property, McGahren had not
completed the repairs. After McGahren received a copy of Vish's appraisal, however, he began to complete the repairs in what the dis-
trict court described as a "rather slipshod manner." McGahren then hired an architect and a real estate salesman to appraise Lot 3. They
testified that Lot 3 was worth between $68,000 and $75,000.

The bankruptcy court credited Vish's opinion. The court found that

McGahren's architect had not yet been licensed as an appraiser. In

12

addition, McGahren's appraisers based their estimates on incomplete and incorrect information. For example, McGahren failed to inform them that he had recently modified Lot 3's property restrictions, that many other property restrictions existed, and that Lot 3 had a history of water seepage.

Furthermore, McGahren's position that Lot 3 is worth between $68,000 and $75,000 does not make sense. The district court rightly pointed out that if the property was worth that much, McGahren's "dogged determination" to include Lot 3 in the bankruptcy estate would be "incomprehensible" since that would mean that McGahren would receive only one-half of the property's equity, as opposed to all of the equity if the bankruptcy court abandoned the property. The district court noted that McGahren's property values were "less than credible" and that his efforts to include Lot 3 in the bankrupt estate probably resulted from his desire to avoid the financial difficulties that would result from a foreclosure action against him.

Thus, we find that the bankruptcy court did not clearly err when it credited First Citizens Bank's expert over McGahren's experts. The facts established at the abandonment hearing support the bankruptcy court's conclusion. Moreover, since Vish appraised Lot 3 at only $55,000, the bankruptcy court correctly concluded that the property's liens exceeded its value and that the property therefore was of incon- sequential value to the estate. Thus, we hold that the district court properly affirmed the bankruptcy court's order abandoning the bank- rupt estate's interest in Lot 3 and granting relief from the automatic stay on the property.

III.

McGahren also sued Heck in a separate adversary proceeding for negligence and intentional misconduct. McGahren claimed that since Lot 3 itself was part of the bankrupt estate, Heck should have sold the property pursuant to the $68,000 offer that McGahren received in 1989 before the fire partially destroyed the property. The bankruptcy court granted summary judgment to Heck, and the district court affirmed. In light of its finding that Lot 3 itself never became property of the bankrupt estate, the district court held that Heck had no duty

to collect and sell it.

13

We review the district court's grant of summary judgment de novo. See M & M Medical Supplies and Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1992). In order to prevail on a motion for summary judgment, the moving party must establish that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). If the moving party carries its burden, the nonmoving party may not rest on the allegations in its complaint, but must produce sufficient evidence that demonstrates that a genuine issue exists for trial. Id. at 324. We view the facts in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

We have previously outlined the nature and scope of a bankruptcy trustee's liability. In Yadkin Valley Bank & Trust Co. v. McGee, 819 F.2d 74, 76 (4th Cir. 1987), we held that a bankruptcy trustee may be held liable in his or her official capacity as a trustee for acts of negligence. However, a trustee may be held personally liable only for willful or intentional misconduct. Id.

McGahren first contends that Heck should be held liable in her official capacity. However, Heck did not act negligently when she failed to collect and sell Lot 3 pursuant to the 1989 offer. As stated above, Lot 3 itself never became property of Weiss's bankrupt estate because it remained titled to W&M. See In re Signal Hill-Liberia Ave. Ltd. Partnership, 189 B.R. 648, 652 (Bankr. E.D. Va. 1995) (holding that partnership property itself does not become property of an individual partner's bankrupt estate). Since Lot 3 itself never entered the bankrupt estate, the district court correctly concluded that Heck had no duty to sell Lot 3. Although the bankruptcy estate did include Weiss's partnership interest in Lot 3, we held above that Weiss's interest was of inconsequential value to the estate given the substantial liens on the property. Thus, contrary to McGahren's assertion, Heck would have breached her duty to the estate if she had collected

Weiss's interest and incurred the significant costs entailed in selling
it.

McGahren next contends that even if Heck had no duty to collect
and sell Lot 3, she acted outside the scope of her duties and should
be held personally liable. When McGahren first discovered the title

14

problem in late December 1989 or early January 1990, he contacted Heck. He claims that Heck told him at that time that he would have to pay the bankrupt estate out of the proceeds of any sale of the prop-
erty. McGahren contends that Heck's statement prevented him from selling Lot 3 and caused the 1989 offer to fall through.

As stated above, however, we may hold bankruptcy trustees personally liable only for willful or intentional misconduct. See Yadkin
Valley Bank & Trust, 819 F.2d at 76. McGahren fails to demonstrate that Heck engaged in any willful or deliberate misconduct. The record
reveals that Heck, the bankruptcy court, and First Citizens Bank all
tried to help McGahren clear the title to Lot 3. In September 1991, Heck offered to abandon the property. In October 1991, a representa-
tive of First Citizens Bank wrote to McGahren and advised him of three different methods to clear the title, including abandonment of
the property by the trustee. In March 1992, Heck moved to abandon the property, and the bankruptcy court granted her motion. The court
advised McGahren that if the abandonment did not clear his title, he
should proceed to do so in state court. In August 1992, another bank
representative advised McGahren that the bank would help him clear the title if he brought the mortgage current.

The undisputed facts in the record demonstrate that when McGahren first learned of the title error, he adamantly insisted that
he owned the property exclusively and that the bankrupt estate had no
interest. He did not change his position until after the fire damaged
the property. At that point, McGahren unrelentingly tried to have the
property included in the bankrupt estate. As the bankruptcy court stated:

> it would be absolutely impossible for the trustee, as it has been impossible for the Court or anybody else to satisfy Mr. McGahren. In fact, the case started out by the trustee offering to do exactly what Mr. McGahren had moved the Court to order the trustee to do and Mr. McGahren immediately changed his position.

Thus, McGahren clearly failed to establish that Heck engaged in any intentional misconduct. The record reveals instead that Heck acted only to help McGahren. We therefore hold that the district

court

15

properly affirmed the bankruptcy court's order granting summary judgment to Heck.

IV.

The bankruptcy court imposed sanctions on McGahren pursuant to Federal Rule of Bankruptcy Procedure 9011 and the inherent power of the court for his conduct in opposing Heck's motion for abandonment and First Citizens Bank's motion to lift the stay. McGahren appealed, and the district court affirmed the bankruptcy court's decision to impose sanctions. We review the bankruptcy court's order for abuse of discretion. <u>See Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 405 (1990).

A.

Federal Rule of Bankruptcy Procedure 9011 provides in pertinent part:

> Every petition, pleading, motion and other paper served or filed in a case . . . on behalf of a party represented by an attorney . . . shall be signed by at least one attorney of record. . . . A party who is not represented by an attorney shall sign all papers . . . . The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case. . . . If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it . . . an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

16

Fed.R.Bankr.P. 9011(a). The bankruptcy court concluded that McGahren violated all three prongs of Rule 9011. The court found that McGahren maintained frivolous factual and legal positions and that he maintained those positions for the improper purpose of delaying Lot 3's ultimate foreclosure.

In deciding cases based on violations of Rule 9011, courts may look to cases that interpret Federal Rule of Civil Procedure 11. See Valley Nat'l Bank of Ariz. v. Needler (In re Grantham Bros.), 922 F.2d 1438, 1441 (9th Cir. 1991). In determining whether a signatory violated Rule 11, the court must apply an objective standard of reasonableness. See Robeson Defense Comm. v. Britt (In re Kunstler), 914 F.2d 505, 514 (4th Cir. 1990). The fact that McGahren represented himself pro se in the proceedings below does not change our analysis. Rule 9011 does not exempt pro se litigants from its operation; a pro se litigant has the same duties under Rule 9011 as an attorney. See Upadhyay v. Burse (In re Burse), 120 B.R. 833, 837 (Bankr. E.D. Va. 1990); In re 1801 Restaurant, Inc., 40 B.R. 455, 457-58 (Bankr. D. Md. 1984).

The bankruptcy court based sanctions in part on a violation of the first prong of Rule 9011; the court found that McGahren's documents were not well grounded in fact. The court correctly noted numerous misstatements of fact. The record reveals that McGahren initially stated in his documents that he owned Lot 3 exclusively. He also took the inconsistent position that Heck should have sold the property pursuant to the 1989 offer and that Heck's failure to do so caused him to lose the offer. However, the record reveals that the buyers withdrew their offer not because of title problems, but because the house had serious structural problems and the buyer lost her job.

Moreover, McGahren employed false and deceptive methods to prove Lot 3's fair market value. McGahren stated in various signed documents that State Farm had insured Lot 3 for $75,000. However, the record reveals that although State Farm issued a temporary binder while it appraised the property, it ultimately declined to insure the property for any value and denied McGahren's application. As the district court found, "[t]his is a prime example of McGahren's use of half-truths to attempt to prove his case." In addition, McGahren's experts based their appraisals on incorrect information; McGahren

failed to tell them about property restrictions and water problems. Thus, the property values that McGahren asserted in his documents were deceptive. We therefore hold that the bankruptcy court did not abuse its discretion in concluding that McGahren's signed documents were not well grounded in fact.

The district court also found that McGahren's documents were not well grounded in law. We agree. McGahren's contention throughout the abandonment proceedings that the bankrupt estate included Lot 3 was not warranted by existing law. As stated above, courts consistently have held that partnership property itself does not become property of an individual partner's bankruptcy estate. See, e.g., In re Signal Hill-Liberia Ave. Ltd. Partnership, 189 B.R. 648, 652 (Bankr. E.D. Va. 1995); Magers v. Thomas (In re Vannoy), 176 B.R. 758, 770 (Bankr. M.D.N.C. 1994). McGahren failed to make a good-faith argument, or any argument at all, for the reversal of such well established law.

As one district court noted:

> To prevail on an appeal from the imposition of . . . sanctions, appellant[ ] must show that the Bankruptcy Court abused its discretion in finding that [his] conduct was not reasonable. . . . Because a determination of whether a legal position is "substantially justified" depends greatly on factual determinations, [the bankruptcy judge] was better positioned to make such factual determinations.

In re Studio Camera Supply, Inc., 116 B.R. 70, 73-74 (E.D. Mich. 1990). We hold that the bankruptcy court in the instant case did not abuse its discretion in finding that McGahren's signed documents were not well grounded in law.

The bankruptcy court could have imposed sanctions for the violations already discussed, see In re Kunstler, 914 F.2d at 518, but the bankruptcy court also based its award of sanctions on McGahren's improper purpose in filing his documents. Rule 9011 provides that "improper purposes" include purposes "to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Bankr.P. 9011. The purposes that Rule 9011 lists are not exclu-

18

sive. See In re Kunstler, 914 F.2d at 518. We agree with the district court that documents filed for the central purpose of delaying or avoiding a collateral state foreclosure constitute documents filed for an "improper purpose."

In order to determine whether a particular signatory acted with an improper purpose, a district court must judge the signatory's conduct under an objective standard of reasonableness. In re Kunstler, 914 F.2d at 518. In other words, it is not enough that the injured party sub-jectively believes that the signatory filed a document to harass him. Id. Instead, the court must derive the signer's purposes from objective evidence of the signer's motive in filing the document. Id. at 518-19. The court may consider circumstantial facts that surround the filing as evidence of the signer's purpose. Id. at 519. Baseless allegations also indicate an improper purpose. Id.

The bankruptcy court in the instant case did not abuse its discretion in finding that the evidence objectively demonstrated that McGahren objected to Heck's motion to abandon for the improper purpose of delaying foreclosure. McGahren openly admitted several times during the course of the abandonment hearings that his efforts to include Lot 3 in the bankrupt estate resulted from his desire to avoid the financial difficulties that would result from a foreclosure action against him. In addition, the fact that McGahren's allegations and asserted property values lacked a factual or legal basis strongly indicates that he filed his documents for an improper purpose. Thus, we affirm the bank-ruptcy court's finding that McGahren also violated the improper pur-pose prong of Rule 9011.

Accordingly, we hold that the bankruptcy court did not abuse its discretion in finding that McGahren violated all three prongs of Rule 9011. McGahren filed questionable documents with inadequate legal foundations that caused the trustee and the bank to incur significant legal expenses in defense.

B.

A federal court also possesses the inherent power to regulate liti-
gants' behavior and to sanction a litigant for bad-faith conduct.
See
Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991). A court may

19

invoke its inherent power in conjunction with, or instead of, other sanctioning provisions such as Rule 9011. Id. at 46-50. See also In re Heck's Properties, Inc., 151 B.R. 739, 765 (S.D. W.Va. 1992) ("It is well-recognized, however, quite apart from Rule 9011, that courts have the inherent authority to impose sanctions upon[litigants] who [are] found to have acted in bad faith, vexatiously, wantonly or for oppressive reasons.").

The bankruptcy court sanctioned McGahren pursuant to its inherent powers as well as Rule 9011. McGahren claims that he did not act in bad faith and that the bankruptcy court improperly invoked its inher-ent powers. McGahren's behavior in the bankruptcy proceedings, however, clearly constitutes bad-faith conduct. For example, in July 1992, McGahren appeared before the bankruptcy court at the aban-donment hearing and asked the court for a quitclaim deed from Heck. Heck tendered a deed the next day, but McGahren refused to accept it. McGahren also attacked witnesses who testified for Heck. He filed complaints with the North Carolina Real Estate Commission against appraisers that Heck and the bank employed. He sued Heck and the attorney who represented the original buyers of the property in state court. He also sued First Citizens Bank, its officers, and attorneys in state and federal court. In addition, McGahren repeatedly interrupted witnesses during their testimony in order to cut off unfavorable answers. At times, he became so upset that the bankruptcy court had to warn him of the presence of federal officers. He also repeatedly ignored the bankruptcy court's warnings to move the hearings expedi-tiously.

The conduct described above does not technically fall under the auspices of Rule 9011 since it occurred during hearings rather than in the context of signed pleadings. However, it clearly fits within the inherent power of the court to sanction. Much of McGahren's conduct involved deceptions, half-truths, and misrepresentations presented to the bankruptcy court itself. As the Supreme Court found in a similar case, "his entire course of conduct throughout the [proceedings] evi-denced bad faith and an attempt to perpetrate a fraud on the court, and the conduct sanctionable under the Rules was intertwined within

con-
duct that only the inherent power could address." <u>Chambers</u>, 501 U.S.
at 51. Thus, we hold that the bankruptcy court did not abuse its dis-
cretion in imposing sanctions pursuant to its inherent powers.

20

V.

Although the district court affirmed the bankruptcy court's decision
to impose sanctions, the district court reversed the bankruptcy court's
order that McGahren pay the attorneys' fees that Heck and First Citi-
zens Bank incurred after the district court's February 1993 remand of
the bankruptcy court's abandonment order. The district court
remanded the sanctions order to the bankruptcy court for further pro-
ceedings to determine the proper amount of sanctions. Pursuant to the
district court's remand, the bankruptcy court held a hearing on Octo-
ber 18, 1995. On November 2, 1995, the bankruptcy court reduced its
prior award of attorney's fees and also awarded additional attorney's
fees to Heck's attorney, David Gray, for McGahren's subsequent con-
duct.

On November 10, 1995, Johanna McGahren, the personal represen-
tative of McGahren's estate, filed a notice of appeal. On March 1,
1996, the district court clerk mailed a briefing letter to Mrs.
McGahren that stated that the appeal had been docketed and that her
brief was due within fifteen days of the letter's date. The clerk
attached a mailing certificate to the letter that indicates that the clerk
did indeed mail the letter to Mrs. McGahren's address on March 1,
1996. On April 11, 1996, Heck and Gray filed a motion to dismiss the
appeal on the ground that Mrs. McGahren had not filed a brief within
the time limit. In her response and opposition to the motion, Mrs.
McGahren claimed that she never received the clerk's briefing letter.
The district court, however, dismissed the appeal pursuant to Federal
Rules of Bankruptcy Procedure 8001(a) and 8009(a). Mrs. McGahren
now appeals the district court's dismissal order. We review the order
for abuse of discretion. See Resolution Trust Corp. v. SPR Corp. (In
re SPR Corp.), 45 F.3d 70, 74-75 (4th Cir. 1995).

Rule 8009(a)(1) provides that bankruptcy appellants must file their
briefs within fifteen days after entry of the appeal on the docket.
Fed.R.Bankr.P. 8009(a)(1). The notice that the court clerk sends to
the appellant triggers the time period. Jewelcor Inc. v. Asia Commer-
cial Co., 11 F.3d 394, 397-98 (3d Cir. 1993). Thus, the notice that

the
district court clerk mailed on March 1, 1996 initiated the fifteen-day
period. Mrs. McGahren therefore had to file her brief by March 16,
1996.

21

Mrs. McGahren claims that she never received the clerk's letter. However, we have clearly held that "`[a] letter properly addressed, stamped and mailed is presumed to have been duly delivered to the addressee.'" Federal Deposit Ins. Corp. v. Schaffer, 731 F.2d 1134, 1137 n.6 (4th Cir. 1984) (quoting C. McCormick, McCormick's Handbook of the Law of Evidence § 343 (1972)). Mrs. McGahren's response to the Appellees' motion to dismiss reveals that her mailing address is identical to the address on the clerk's letter, and the mailing certificate reveals that the clerk did indeed mail the letter to that address. Mrs. McGahren failed to rebut the presumption that she received the briefing letter, and we therefore presume that she received it. Thus, since she failed to file her brief within the specified time, the district court correctly found that she violated Rule 8009(a).

If an appellant violates one of the rules of bankruptcy procedure, the district court may dismiss the appeal. Federal Rule of Bankruptcy Procedure 8001(a) provides that an appellant's failure "to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court . . . deems appropriate, which may include dismissal of the appeal." Fed.R.Bankr.P. 8001(a).

We have previously addressed the propriety of a district court's decision to dismiss an appeal pursuant to Rule 8001(a) for violations of the rules of bankruptcy procedure. In Serra Builders, Inc. v. John Hanson Sav. Bank FSB (In re Serra Builders, Inc.) , 970 F.2d 1309 (4th Cir. 1992), we held that the district court properly dismissed an appeal pursuant to Rule 8001(a) after the appellant filed its designation of items to be included in the record fifteen days late.**4** We held that before a district court may dismiss an appeal pursuant to Rule 8001(a), it must take at least one of the following steps: 1)make a finding of bad faith or negligence; 2)give the appellant notice and an opportunity to explain the delay; 3)consider whether the delay had any possible prejudicial effect on the other parties; or 4)indicate that

---

**4** Federal Rule of Bankruptcy Procedure 8006 requires a bankruptcy

appellant to file a designation of the items to be included in the record
and a statement of the issues to be presented on appeal within ten days
after filing a notice of appeal. Fed.R.Bankr.P. 8006.

22

it considered the impact of the sanction and available alternatives. Id. at 1311.

In Resolution Trust Corp. v. SPR Corp. (In re SPR Corp.), 45 F.3d 70 (4th Cir. 1995), we reexamined the test for dismissal under Rule 8001(a). We noted that although the Serra Builders test literally only required the district court to take one of the four steps, "a proper application of its test will normally require a district court to consider and balance all relevant factors." Id. at 74. We also specifically held that the second step, giving the appellant notice and an opportunity to explain the delay, does not by itself suffice to dismiss an appeal. Id.

The district court in the instant case attempted to address all four of the Serra Builders factors. Applying those factors, the district court: 1)found that Mrs. McGahren filed the appeal in bad faith; 2)gave Mrs. McGahren notice and an opportunity to explain her delay in filing a brief; 3)found that the delay prejudiced the debtors and creditors of the bankrupt estate; and 4)indicated that it had considered possible alternatives. Mrs. McGahren, however, argues that the district court abused its discretion in making those findings.

However, we do not conclude there was such abuse. Bad faith was inferable from the overall behavior of the McGahrens throughout the procedure. Mrs. McGahren's failure to explain satisfactorily her nonfiling of a brief after the district court gave her an opportunity to do so satisfied the second Serra Builders factor. Prejudice suffered by the bankruptcy trustee was also felt by the creditors she represented. Finally, the district court's conclusion that less severe sanctions would prove futile was supported by the record.

VI.

Accordingly, we affirm the district court's orders regarding the abandonment of Lot 3, summary judgment in favor of Heck, and the imposition of sanctions on McGahren. We also affirm the district court's dismissal of Mrs. McGahren's appeal from the bankruptcy court's second sanctions order.

The judgment is, accordingly,

 <u>AFFIRMED</u>.

24