**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In re: VIVIAN J. HARDEE,
<u>Debtor.</u>

BARBARA L. WHITE,
<u>Plaintiff-Appellant,</u>                                              <u>No. 96-1968</u>

v.

RICHARD M. MITCHELL, Trustee for
Vivian J. Hardee,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert D. Potter, Senior District Judge.
(CA-95-504-3-P, BK-95-31282)

Argued: April 10, 1998

Decided: October 20, 1998

Before MURNAGHAN, HAMILTON, and MICHAEL,
Circuit Judges.

_____

Reversed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Barbara Leslie White, Charlotte, North Carolina, for
Appellant. Richard M. Mitchell, MITCHELL, RALLINGS, SINGER,

MCGIRT & TISSUE, P.L.L.C., Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Barbara White appeals monetary sanctions imposed upon her under Bankruptcy Rule 9011 for conduct arising from her representation of Vivian Hardee in Hardee's personal bankruptcy case. The trustee for the bankruptcy estate moved for sanctions after he suspected that White had purposely misrepresented the nature of a pension asset in a statement and schedules filed with the debtor's petition. The bankruptcy court imposed sanctions on White in 1995 after determining that she had violated Rule 9011, which relates to the signing of court papers. The district court affirmed. Because the papers in question did not have to be signed by an attorney, Rule 9011 (as it existed in 1995) did not authorize sanctions. Moreover, we believe that White's conduct did not warrant a sanction under any other authority. We therefore reverse.

I.

This dispute centers around a single asset. In 1991 Hardee acquired a beneficial interest in an ERISA-qualified pension plan following the death of her cousin, James Swink. Swink had worked as a teacher on Long Island and had named Hardee as the beneficiary of his pension plan benefits in the event of his death. After Swink's death the plan manager, Teachers Insurance and Annuity Association of America-College Retirement Equities Fund (TIAA-CREF), gave Hardee the option of taking a lump-sum payment from the plan or drawing an annuity that would be paid monthly over approximately eighteen years. Hardee chose the annuity.

2

Hardee filed a Chapter 7 bankruptcy petition on August 31, 1995. The TIAA-CREF annuity was listed in four separate places on forms filed with the petition. First, it was listed on Schedule B as personal property. Second, it was shown on Schedule C as property claimed as exempt, with the notation that the exemption was provided under ERISA. Third, the monthly income from the annuity was listed on Schedule I as "other monthly income." Finally, in the statement of financial affairs, the income was listed as "income other than from employment or operation of business."

A trustee was appointed for Hardee's bankruptcy estate on September 1, 1995. At a meeting of creditors held pursuant to 11 U.S.C. § 341(a) (1994), the trustee asked if there were any amendments to Hardee's petition. Hardee answered that there were not. The trustee then asked Hardee to explain the "Teachers and Insurance Annuities" listed on the schedules. Hardee said that this was an annuity she had inherited from her cousin. White, Hardee's attorney, added that she may need to amend the schedules to reflect this information. The trustee then abruptly closed the meeting, saying that he had already asked for amendments and had been told there were none. The trustee apparently believed that White had deliberately mischaracterized the pension asset on the schedules.[1]

_____

[1] Qualified pension benefits may be excluded from a bankruptcy estate, thereby placing them beyond the reach of creditors. See Patterson v. Shumate, 504 U.S. 753, 755 (1992). This result is brought about by § 541(c)(2) of the Bankruptcy Code, which excludes from the bankruptcy estate any interest in a trust that is subject to transfer restrictions under applicable non-bankruptcy law. Shumate, 504 U.S. at 758. This necessarily excludes from the bankruptcy estate all interests in pension plans that are qualified under the Employee Retirement Income Security Act of 1974 (ERISA), which requires that all pension plans include a prohibition on assignment and alienation. See 29 U.S.C. § 1056(d)(1) (1994).

Here, the trustee claimed that by failing to indicate that the debtor (Hardee) was a beneficiary of someone else's pension plan, White (the debtor's attorney) had improperly created the impression that the pension benefits could be excluded or exempted from the bankruptcy estate. In fact, the bankruptcy court found that the pension should be excluded from the estate, even though Hardee was only a beneficiary of the pension and not the original participant in the pension plan. See In re Hardee, No. 95-31282 at 3-4 (Bankr. W.D.N.C. Nov. 22, 1995) (order sustaining objection to exemption).

3

The trustee subsequently moved for sanctions against White. The bankruptcy court granted the motion and ordered White to forfeit her fees in the case, pay attorney's fees of $500 to the trustee, and pay a penalty of $2,500 into court. White appealed to the district court, which affirmed. She has taken a further appeal to us.

II.

The sanctions here were imposed under Bankruptcy Rule 9011. In reviewing an award of sanctions under Rule 9011, we may follow the standards applicable under Federal Rule of Civil Procedure 11, a corresponding sanctions provision. In re Weiss, 111 F.3d 1159, 1170 (4th Cir. 1997). We review an award of sanctions under Rule 11 using an abuse of discretion standard. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990). A court abuses its discretion if it bases its order for sanctions on "an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. We adopt the same standard of review for sanctions imposed under Bankruptcy Rule 9011. See In re Weiss, 111 F.3d at 1170.

III.

The sanctions against White were imposed in 1995. Our first question, then, is whether Bankruptcy Rule 9011, as it existed prior to its amendment in 1997, authorized sanctions against an attorney for defects in bankruptcy schedules and statements. **2**

Before the 1997 amendment Rule 9011(a) stated:

_____

**2** Rule 9011 was amended in 1997 to conform to the 1993 changes to Federal Rule of Civil Procedure 11. See Fed. R. Bankr. P. 9011 advisory committee's notes. This amendment broadened the scope of attorneys' obligations to the court, but placed additional constraints on the imposition of sanctions. See Fed. R. Civ. P. 11 advisory committee's notes. The amendment to Rule 9011 also gave courts discretion to impose sanctions; previously, sanctions for violations were mandatory. See Fed. R. Bankr. P. 9011 advisory committee's notes.

Our discussion as to the scope of Rule 9011 is limited to the rule as it existed prior to the 1997 amendment.

4

(a) Signature

Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state the party's address and telephone number. The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case. If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

This rule, like Rule 11 of the Federal Rules of Civil Procedure, is aimed at curbing abuses of the judicial system. Both Rule 11 and Bankruptcy Rule 9011 operate by way of a certification requirement. However, the certification scheme of Rule 9011 does not extend to bankruptcy schedules and statements. Attorneys need not sign (and thereby certify) every document in a bankruptcy case. The provision of Rule 9011(a) that actually authorizes sanctions begins "[i]f a document is signed in violation of this rule . .. ." (emphasis added). The Advisory Committee's Notes define "document" as "all papers

5

which the attorney or party is required to sign."**3** Fed. R. Bankr. P. 9011, advisory committee's notes. However, Rule 9011(a) exempts "a list, schedule, or statement, or amendments thereto" from the signature requirement. Since the schedules and statements need not be signed by an attorney, they are not "documents" for the purposes of Rule 9011 and therefore cannot trigger the imposition of sanctions under the rule. See In re Palumbo Family Ltd. Partnership, 182 B.R. 447, 475-76 (Bankr. E.D. Va. 1995); In re Eatman , 182 B.R. 386, 396 (Bankr. S.D.N.Y. 1995); In re Remington Dev. Group, 168 B.R. 11, 15 (Bankr. D.R.I. 1994); In re Ostas, 158 B.R. 312, 319 (Bankr. N.D.N.Y. 1993); In re Alderson, 114 B.R. 672, 677 (Bankr. D.S.D. 1990); but see In re Weiss, 111 F.3d at 1170. In sum, the plain meaning of Rule 9011 does not allow the imposition of sanctions on White for defects in the schedules and statement at issue in this case. The district court therefore erred in affirming the sanctions.**4**

IV.

Although Rule 9011, as it existed in 1995, did not authorize sanctions against an attorney for defects in bankruptcy schedules and statements, we recognize that bankruptcy courts have other avenues for sanctioning improper conduct by parties and attorneys. For example, bankruptcy courts may punish criminal contempt, Fed. R. Bankr. P. 9020, and civil contempt, see In re Walters , 868 F.2d 665, 670 (4th Cir. 1989). They may impose sanctions for abuses in the discovery process. See Fed. R. Bankr. P. 7037 (incorporating Fed. R. Civ. P. 37 into Bankruptcy Rules). Bankruptcy courts also possess the inherent power to regulate litigants' behavior and to sanction wrongdoing by litigants. See In re Weiss, 111 F.3d at 1171; A.H. Robins Co. v.

_____

**3** Ordinarily, pleadings and papers must be signed by an attorney. See Fed. R. Bankr. P. 9011(a). If a party is not represented by counsel, that party must sign the documents in place of an attorney. See id.

**4** We note that some bankruptcy courts have narrowed the exemption in Rule 9011 to the "lists," "schedules," and "statements" required to be filed under Federal Rule of Bankruptcy Procedure 1007. See, e.g., In re Palumbo Family Ltd. Partnership, 182 B.R. at 475-76; In re Ostas, 158 B.R. at 319. This case fits within this narrow exemption, since the schedules and statement here were filed under Bankruptcy Rule 1007. See Fed. R. Bankr. P. 1007(b).

Piccinin, 788 F.2d 994, 1003 (4th Cir. 1986). This inherent power may be used in combination with, or instead of, the bankruptcy courts' other powers to sanction. See In re Weiss, 111 F.3d at 1171.

In different circumstances, we might have remanded for the consideration of sanctions under authority other than pre-amendment Rule 9011. Here, however, we have all of the facts before us, and we conclude that White should not be sanctioned under any available ground. We say this because the schedules and statement in this case were well grounded in fact and were not filed for any improper purpose. Our explanation follows.

A.

The first consideration is whether the schedules and statement of financial affairs were well grounded in fact. This is measured by an objective standard of reasonableness under the circumstances. See Business Guides, Inc. v. Chromatic Comm. Enter., 498 U.S. 533, 551 (1991); In re Kunstler, 914 F.2d 505, 514 (4th Cir. 1990). This standard was met.

White listed the interest in the pension annuity on the correct line on Schedule B. She also referred to the annuity in three other places -- on Schedule C, claiming the asset as exempt; on Schedule I, listing Hardee's current income from the annuity; and on the statement of financial affairs, listing Hardee's income from the annuity. The trustee's own expert conceded that White had listed this interest in the correct place on Schedule B, stating only that White should have added a note clarifying the nature of the interest. Unartful disclosure, however, such as a conclusory listing, is "irrelevant" to the factual inquiry under Rule 9011. See Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991); Simpson v. Welch, 900 F.2d 33, 36 (4th Cir. 1990). Furthermore, sanctions are inappropriate for "isolated factual errors, committed in good faith, so long as [the document] as a whole remains `well grounded in fact.'" Forrest Creek Assocs. v. McLean Savings & Loan Assn., 831 F.2d 1238, 1245 (4th Cir. 1987).

The level of disclosure here was reasonable in light of the nature and purpose of the bankruptcy schedules and forms. The 1991 Advisory Committee Notes to the Form 6 Schedules (Schedules A-J)

7

explain that "[t]he schedules require a complete listing of assets and liabilities but leave many of the details to investigation by the trustee." 11 U.S.C.A. Official Bankr. Form 6, advisory committee's notes (West pamph. 1998) (emphasis added). Indeed, the schedules were intended to be summaries that could serve as a quick and easy list of relevant information. The Notes state that Schedule C, for example, was simplified in 1991 by "eliminat[ing the] duplication of information provided" on other schedules. See id. Similarly, a former requirement in Schedule C that the debtor state the present use of property was "eliminated as best left to inquiry by the trustee." See id. The requirements for listing personal property in Schedule B also reflect the basic purpose of the schedules. The Notes state that this schedule requires that debtors declare whether they have "any property in each category on the schedule." Id. They add that the trustee "can request copies of any documents concerning the debtor's property necessary to the administration of the estate." Id. The Advisory Committee Notes elaborate that "Section 521(3) of the Code requires the debtor to cooperate with the trustee, who can administer the estate more effectively by requesting any documents from the debtor rather than relying on descriptions in the schedules which may prove to be inaccurate." (emphasis added).

Of course, false and deceptive schedules and statements will not be tolerated and are subject to sanctions. However, there was no falsehood or deception here. White's disclosure of the pension on the schedules and statement was accurate, and the trustee could have investigated further. We recognize that bankruptcy trustees are under pressure to perform their duties in an expeditious fashion. Still, the trustee here was made aware of the pension asset, and he could have taken a couple of minutes to inquire into the source of the asset rather than close the creditors' meeting and move for sanctions.

We conclude that the schedules and statement were well grounded in fact.

B.

The second consideration is whether the schedules and statement of affairs were filed for an improper purpose. The attorney's conduct

8

must be evaluated according to an objective standard of reasonableness. See In re Weiss, 111 F.3d at 1171.

There is ample objective evidence that White did not have an improper purpose in filing the schedules and statement. She disclosed the pension asset in four separate places in the papers. The trustee's witnesses said that the substance of this disclosure would have led them to assume that the debtor was a teacher or retired teacher. However, it was disclosed on Schedule I that Hardee (the debtor) was working as a secretary. This suggests that there was no intent to mislead the trustee as to the nature of Hardee's interest in the pension.

The listing of the pension interest as exempt property under ERISA does not appear to have been made for an improper purpose but rather seems to have been made as part of a good faith argument under the Supreme Court's decision in Patterson v. Shumate , 504 U.S. 753 (1992). In that case the Court held that the non-alienation provisions of ERISA would exclude qualified pension benefits from the bankruptcy estate under 11 U.S.C. § 541(c)(2) (1994). Indeed, the bankruptcy court in this case relied on Patterson v. Shumate to hold that Hardee's pension interest was not property of the bankruptcy estate. In re Hardee, No. 95-31282 at 3-4 (Bankr. W.D.N.C. Nov. 22, 1995) (order sustaining objection to exemption). Of course, White's disclosure of the pension as exempt was not strictly accurate under Patterson v. Shumate because it was excluded entirely from the bankruptcy estate. However, the disclosure of the asset as exempt had two significant advantages. It openly disclosed the existence of the asset to the trustee, avoiding the danger of a subsequent charge that it was improperly omitted in the event it was ultimately determined to be a part of the estate. Disclosure in this manner also gave White an alternative argument, that is, the pension was not property of the estate, but even if it was, it was exempt property.

We conclude that the schedules and statement were not filed for an improper purpose.

V.

Bankruptcy Rule 9011, as it appeared on the books prior to the 1997 amendment, did not provide a basis for sanctioning White in this

9

case. In addition, we conclude that White's conduct did not warrant sanctions under any other authority. The judgment of the district court is therefore reversed.

<u>REVERSED</u>

10